UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

_____

THERON PRESTON WASHINGTON,                    Civil No. 10-4938 (JRT/FLN)

        Plaintiff,

    v.                                            **REPORT AND RECOMMENDATION**

ANOKA COUNTY JAIL,
Deputy KOLLER, and
Deputy BOELTEL,

        Defendants.

_____

    Thereon Preston Washington, Federal Correctional Institution (Medium II) - Butner, P.O. Box 1500, Butner, North Carolina, 27509, Plaintiff, pro se.

    Thomas G. Haluska, Assistant Anoka County Attorney, Government Center, 2100 Third Avenue, Suite 720, Anoka, Minnesota, 55303-5025, for Defendants.

                    _____

FRANKLIN L. NOEL, United States Magistrate Judge

    The Plaintiff in this action, Thereon Preston Washington, is a federal prison inmate who is currently incarcerated at the Federal Correctional Institution (Medium II) in Butner, North Carolina.  He commenced this action by filing a complaint seeking relief under 42 U.S.C. § 1983.  The complaint alleges that the above-named Defendants violated Plaintiff's federal constitutional rights while he was being held in pretrial detention in a county jail.

    Defendants have filed a motion for summary judgment, (Docket No. 33), and Plaintiff has filed a "response" to the motion, (Docket No. 47).  The matter has been referred to this Court for a report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court will recommend that Defendants' motion for summary judgment be granted, and that this action be dismissed.

## I.  FACTUAL BACKGROUND

In June 2010, a federal criminal complaint was filed against Plaintiff here in the District of Minnesota.  He was accused of robbing a bank in Coon Rapids, Minnesota. <u>United States v. Washington</u>, Crim. No. 10-162 (ADM/SER).  In January 2011, Plaintiff entered a guilty plea in his criminal case, and in March 2011, he was sentenced to 46 months in federal prison, to be followed by a three-year term of supervised release.  He is serving that sentence at this time.

While Plaintiff's federal bank robbery case was being prosecuted, he was detained at the Anoka County Jail in Anoka, Minnesota.  He now claims that two Anoka County Sheriff's deputies, Deputy Koller and Deputy Boelter,[1] deliberately tried to poison him while he was detained in the County Jail.  The substantive factual allegations on which Plaintiff's claims are based are set forth in the "Statement of Claim" section of his complaint, which, repeated verbatim and in its entirety, reads as follows:

> "Since I have been at Anoka County Jail, located I [sic] Anoka Minnesota, June 10, 2010 until present I have been ill and told by Deputy Boeltel and Deputy Koller that they have been poisoning my food trays, during chow hours.  Because of a lawsuit filed in Dixon Illinois, Lee County concerning a physical Assult [sic] by a lieutenant who kicked punched and stepped on the Plaintiff [sic] head.  In the year of 2008 Feburary [sic].  I have been seeking medical care here at this facility only to be denied medical care. My symtoms [sic] are and still is and showing obvious symtoms [sic];
>
> 1. Constant lost [sic] of weight
> 2. Fowl [sic] order [sic] in urine
> 3. sore throat
> 4. Pain in Abdomin [sic]
> 5. Darkening of eyes

---

[1]  Deputy Boelter is erroneously identified as "Deputy Boeltel" in Plaintiff's complaint. The Court will use the correct spelling of this Defendant's name, except when quoting directly from Plaintiff's submissions.

         6. Fowl [sic] smell in bowls
         7. Clicking in ears
         8. Pain in Penis

         On December [sic] 15th 2010 officer boeltel [sic] stated that they have
    been placing 'Dog food poisoning' in my trays.  December l6th 2010 officer
    koller [sic] stated while I was coming out of Bible study during my search pat
    down at this particular time lunch trays was [sic] being served.  Koller stated
    during the serach [sic] that 'We got you again'.  Get your tray this is why you
    have been hearing clicking in your ears.  Dr. Aiper who has been seeing me
    and have [sic] been noticing the obvious symtoms [sic] discharging from
    penis and aware of pain in my penis have [sic] not treated them.  He stated
    before 'drop your charges'.  He has placed me on an appointment to see an
    outside specialist but the Federal Burera [sic] of Investigation and the United
    States Marshall [sic] are prolongtin [sic] the movement, to the outside
    physician hoping that my symtoms [sic] will worsen.  I am pursuing this
    matter under 'cruel and unusal [sic] punishment' and conspriacey [sic] to
    deny me of my civil rights by Deputy Sheiffs [sic]."

(Complaint, [Docket No. 1], Attachment, "Statement of Claim.")

    Based on these allegations, Plaintiff is attempting to sue Defendants Koller, Boelter,

and "Anoka County Jail" under 42 U.S.C. § 1983.  He is seeking a judgment against

Defendants that will "Provide Injunction For Harassment on other Civil Cases[;] Provide For

Punitive Damages For Pain and Suffering [and] Provide Proper Medical Care." (Id., p. 3,

§ V, " Relief.")[2]

## II. STANDARD OF REVIEW

    In considering a motion for summary judgment, the Court is to determine whether

there are any genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317

_____

    [2] Plaintiff's claims for injunctive relief have become moot, because he is no longer
confined at the Anoka County Jail, or any other facility that is subject to any control by any
of the Defendants.  See Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (prisoner
claims for injunctive relief rendered moot by transfer to a different institution); Randolph v.
Rodgers, 253 F.3d 342, 344-46 (8th Cir. 2001)  (dismissing prisoner's claims for injunctive
relief against prison officials where the prisoner was no longer confined at the facility where
those prison officials worked).

(1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986); <u>Matsushita Electric Industrial</u>

<u>Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).  When there is no reasonable construction

of the facts that would allow the nonmoving party to prevail, the remedy of summary

judgment is appropriate.  <u>Matsushita</u>, 475 U.S. at 587-88.  The role of the court is not to

weigh the evidence, but to determine whether, as a matter of law, a genuine factual conflict

exists.  <u>AgriStor Leasing v. Farrow</u>, 826 F.2d 732, 734 (8th Cir. 1987).  In making this

determination, the court is required to view the evidence in the light most favorable to the

nonmoving party, and to give that party the benefit of all reasonable inferences that can be

drawn from the evidence.  <u>Id</u>.

On a motion for summary judgment, the moving party has the initial burden of

establishing the "material facts" and demonstrating that there is not a "genuine" dispute as

to whether those material facts are true.  Fed. R. Civ. P. 56(c).  To defeat the motion, the

opposing party must then establish that there is a "genuine" issue as to material facts.

"When the moving party has carried its burden under Rule 56(c), its opponent must

do more than simply show that there is some metaphysical doubt as to the material facts."

<u>Matsushita Elec. Indus. Co. Ltd.</u>, 475 U.S. at 586; Fed. R. Civ. P. 56(e).  If a motion for

summary judgment is properly supported by affidavits or other evidence, the nonmoving

party must set forth specific facts, by affidavits or otherwise, showing that there is a

genuine issue for trial.  <u>Id</u>. at 587; <u>Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet</u>

<u>Foods, Inc.</u>, 824 F.2d 582, 585 (8th Cir. 1987), <u>cert</u>. <u>denied</u>, 484 U.S. 1010 (1988).

Although the evidence is examined in the light most favorable to the non-moving party, the

non-moving party may not rely on conclusory allegations or denials.  <u>Anderson</u>, 477 U.S.

at 256; <u>Lambert v. City of Dumas</u>, 187 F.3d 931, 934-35 (8th Cir. 1999).

4

The Court is mindful that pro se pleadings should be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); White v. Bond, 720 F.2d 1002, 1003 (8th Cir. 1983). Therefore, pro se pleadings are held to less stringent standards when challenged by motions to dismiss or for summary judgment. Haines, 404 U.S. at 520; Horsey v. Asher, 741 F.2d 209, 211 n.3 (8th Cir. 1984). Nonetheless, a pro se plaintiff's claim cannot survive a motion for summary judgment unless he has presented some form of evidence demonstrating that there is a genuine issue of material fact that requires a trial. Miller v. Solem, 728 F.2d 1020, 1023, (8th Cir.), cert. denied, 469 U.S. 841 (1984); Binkley v. Entergy Operations, Inc., 602 F.3d 928, 931 (8th Cir. 2010).

## III. DISCUSSION

### A. Claims Against Defendant "Anoka County Jail"

One of the Defendants that Plaintiff is attempting to sue in this case is identified as "Anoka County Jail."   However, whatever claims Plaintiff is attempting to bring against "Anoka County Jail" must be summarily dismissed, because a county jail is not a party that has the legal capacity to be sued.  "Anoka County Jail" is not a person, corporation, political subdivision, governmental agency or other cognizable entity; it is merely a name given to a detention facility.  Therefore, Anoka County Jail cannot be sued as such, and Plaintiff's purported claims against Anoka County Jail must be dismissed.  See Owens v. Scott County Jail, 328 F.3d 1026, 1027 (8th Cir. 2003) (per curiam) (affirming summary judgment dismissal of claims against defendant county jail, "because county jails are not legal entities amenable to suit"); De La Garza v. Kandiyohi County Jail, Correctional Institution, 18 Fed.Appx. 436, 437 (8th Cir. 2001) (unpublished opinion) (upholding summary dismissal of action brought against a county jail, because it was not a suable entity); Marsden v. Federal

<u>Bureau of Prisons</u>, 856 F.Supp. 832, 836 (S.D.N.Y. 1994) (holding that "a jail is not an entity that is amenable to suit," and citing four other federal court decisions that have ruled the same).[3]

B.  <u>Claims Against Defendants Koller and Boelter</u>

Plaintiff's complaint does not indicate whether he is attempting to sue Defendants Koller and Boelter in their official capacities or their individual capacities.  The Eighth Circuit Court of Appeals has repeatedly held that if a plaintiff in a § 1983 case does not expressly state that a defendant is being sued in his or her individual capacity, then the plaintiff's claims are deemed to be brought against the defendant only in his or her official capacity. As explained by the Court of Appeals, "in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings." <u>Johnson</u>

_____

[3] Even if Plaintiff were attempting to sue a legally cognizable party such as Anoka County or the Anoka County Sheriff, his current complaint still would be deficient, because it presents no facts that could support an actionable civil rights claim against any such party.  The doctrine of <u>respondeat superior</u> is not applicable to § 1983 actions (such as this one), so a party cannot be held vicariously liable for unconstitutional acts or omissions by its employees or subordinates.  <u>Vaughn v. Greene County, Ark.</u>, 438 F.3d 845, 851 (8th Cir. 2006) ("it is well settled the doctrine of <u>respondeat superior</u> is inapplicable to section 1983 claims").  If a § 1983 claimant is attempting to sue a municipality, (e.g., a county), he must allege facts showing that his constitutional rights were violated by means of some custom or policy maintained by the municipality.  <u>Los Angeles County, Cal. v. Humphries</u>, 131 S.Ct. 447, 450 (2010) ("a municipal entity is liable under § 1983 only if a municipal 'policy or custom' caused a plaintiff to be deprived of a federal right") (citation omitted).  To maintain a § 1983 claim against an <u>individual</u> supervisory party, (e.g., a county sheriff), the claimant must allege facts showing that the supervisory party himself <u>personally</u> violated the claimant's constitutional rights.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009) ("[b]ecause vicarious liability is inapplicable to... § 1983 suits, a plaintiff must plead that each Government-official defendant, <u>through the official's own individual actions</u>, has violated the Constitution") (emphasis added).  Plaintiff's current complaint does not allege any facts showing that his constitutional rights were violated by <u>any</u> supervisory party's customs or policies, or individual acts or omissions.  Therefore, Plaintiff's complaint fails to state an actionable § 1983 claim against any other party that he might have been attempting to sue when he named "Anoka County Jail" as a Defendant.

v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999).

Because Plaintiff's complaint does not specifically indicate whether he is attempting to sue Koller and Boelter in their official or individual capacities, it must be assumed that they are being sued only in their official capacities. Id. See also Artis v. Francis Howell North Band Booster Ass'n., Inc., 161 F.3d 1178, 1182 (8th Cir. 1998) ("[i]f the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity"); Andrus ex rel. Andrus v. Arkansas, 197 F.3d 953, 955 (8th Cir. 1999) ("if a complaint is silent, or only hints at the capacity in which a state officer is sued for monetary damages, the complaint should be interpreted as an official-capacity claim....[;] [i]n actions against officers, specific pleading of individual capacity is required to put public officials on notice that they will be exposed to personal liability") (citing Egerdahl v. Hibbing Community College, 72 F.3d 615, 619 (8th Cir.1995), and Nix v. Norman, 879 F.2d 429, 431 (8th Cir.1989)); Baker v. Chisom, 501 F.3d 920, 923 (8th Cir. 2007) ("[w]e have repeatedly stated the general rule: 'If a plaintiff's complaint is silent about the capacity in which [he] is suing the defendant, we interpret the complaint as including only official-capacity claims'") (citations omitted); Lundak v. Nyseth, Civil No. 04-4297 (JRT/FLN), (D.Minn. 2005), 2005 WL 2216313 at *2 ("[i]t is long established that a § 1983 litigant wishing to sue a government agent in his individual, as well as official, capacity must 'expressly and unambiguously state so in the pleadings'") (quoting Johnson, supra).

It is also well-settled that a § 1983 claim against a government employee in his or her official capacity is deemed to be a claim against that person's governmental employer. Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("[o]fficial capacity suits... 'generally represent only another way of pleading an action against an entity of which an officer is an

agent'") (quoting <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 690, n. 55 (1978)); <u>Parrish v. Ball</u>, 594 F.3d 993, 997 (8th Cir. 2010) ("'[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent'") (quoting <u>Elder-Keep v. Aksamit</u>, 460 F.3d 979, 986 (8th Cir.2006)).   Therefore, Plaintiff's current § 1983 official capacity claims against Defendants Koller and Boelter must be treated as a claim against their employer – Anoka County.   <u>See</u> <u>Winnett v. Saline County Jail</u>, 372 Fed.Appx. 688, 690 (8th Cir.) (<u>per</u> <u>curiam</u>) (unpublished opinion) (§ 1983 action against county employees in their official capacities is viewed as a suit only against the county), <u>cert</u>. <u>denied</u>, 131 S.Ct. 424 (2010).

To sustain an official capacity claim against municipal employees, such as Defendants Koller and Boelter, a § 1983 claimant "must prove that the 'municipality <u>itself</u> caused the constitutional violation at issue.'"   <u>Elder-Keep</u>, 460 F.3d at 986, quoting <u>Kuha v. City of Minnetonka</u>, 365 F.3d 590, 604 (8th Cir.2003) (emphasis in original).   A municipality, such as Anoka County, can be liable under § 1983, but only if the claimant proves that the municipality has adopted some policy, custom or practice that caused a violation of the claimant's federal constitutional rights.   <u>City of Canton v. Harris</u>, 489 U.S. 378, 386-87 (1989).   <u>See</u> <u>also</u> <u>Angarita v. St. Louis County</u>, 981 F.2d 1537, 1546 (8th Cir. 1992) ("[a] municipality may be held liable under Section 1983 only if a municipal custom or policy caused the deprivation of [a] right protected by the constitution or federal laws"); <u>Williams v. Little Rock Municipal Water Works</u>, 21 F.3d 218, 223 (8th Cir. 1994) ("municipal governments can be held liable for the acts of their employees in contravention of the civil rights of individuals only upon a showing that a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' is the motivating force

behind the acts of those employees") (quoting <u>Monell</u>, 436 U.S. at 690); <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991) ("[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law'") (citations omitted); <u>Grayson v. Ross</u>, 454 F.3d 802, 810 -11 (8th Cir. 2006) ("[o]fficial-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy'") (quoting <u>Monell</u>, 436 U.S. at 694).

In this case, Plaintiff has not shown, or even alleged, that his constitutional rights were violated because of some particular policy, custom or practice adopted by Anoka County. Moreover, the Court cannot independently locate anything in the record that would allow a judge or jury to find that the Plaintiff's constitutional rights were violated because of a policy or custom adopted by Anoka County and followed by its employees. Thus, the Court finds that Plaintiff has not presented an actionable official capacity claim against Defendant Koller or Defendant Boelter. For this reason alone, Koller and Boelter are entitled to summary judgment. <u>See</u> <u>Williams</u>, 21 F.3d at 223-24 ( § 1983 official capacity claims were properly dismissed on summary judgment, because plaintiff "offer[ed] no facts or evidence regarding the existence of a particular [municipal] policy or custom which caused her to be subjected to a deprivation of constitutional rights," and "no reasonable factfinder could conclude that there was any [such] policy or custom").

C. <u>Absence of Rebuttal Evidence</u>

Even if Plaintiff had sued Defendants Koller and Boelter in their individual capacities, (or even if Plaintiff were to amend his pleading to allege individual capacity claims),

Defendants still would be entitled to summary judgment.  This is so, because Defendants' evidentiary submissions show that Plaintiff could not sustain an individual capacity claim, and Plaintiff has not offered any evidence in rebuttal.

In order to sustain a § 1983 civil rights claim against Defendants Koller and Boelter in their individual capacities, Plaintiff would have to show that Defendants violated his federal constitutional rights while they were acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  Plaintiff's complaint does not expressly identify any specific constitutional right that Defendants allegedly violated.  However, the Court will presently assume, hypothetically, that Plaintiff might be attempting to claim that Defendants violated his constitutional right to due process by placing poison, or some other foreign matter, in his food.[4]

---

[4]  Although Plaintiff's complaint does not mention the Constitution or any specific constitutional provision, it does include the phrase "cruel and unusual punishment."  This suggests that Plaintiff is claiming a violation of his rights under the Eighth Amendment. However, it appears that Plaintiff's claims are based on events that allegedly occurred before he was convicted and sentenced, and the Eighth Amendment was not applicable to him at that time.  See Ingraham v. Wright, 430 U.S. 651, 671 n. 40 (1977) ("the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law"). However, "[t]he Supreme Court has held that pretrial detainees are entitled under the Fourteenth Amendment to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment."  Spencer v. Knapheide Truck Equipment Co., 183 F.3d 902, 906 (8th Cir. 1999), cert. denied, 528 U.S. 1157 (2000), quoting City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983).  For this reason, the Eighth Circuit Court of Appeals has consistently applied Eighth Amendment standards to § 1983 claims brought by jail inmates complaining about mistreatment during pretrial detention.  See e.g., Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994) (legal standard applied to pretrial detainee's Fourteenth Amendment conditions-of-confinement claim is "identical" to the legal standard applied to a convicted inmate's Eighth Amendment conditions-of-confinement claim).  See also Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of... pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners....

Defendants have submitted evidence showing that they did not poison or otherwise tamper with Plaintiff's food.  Both Defendant Koller and Defendant Boelter have submitted sworn affidavits which explicitly affirm that they did not tamper with any of Plaintiff's food, in any way, at any time during his confinement at the Anoka County Jail.  (Affidavit of Chad Koller, [Docket No. 39], p. 2, ¶s 10-11); Affidavit of Jeffrey Boelter, [Docket No. 36], p. 2, ¶s 6-7.)  Those affidavits further show that neither Koller nor Boelter ever told Plaintiff that his food had been adulterated.  Another affidavit shows that Plaintiff's food was "checked" by sheriff deputies "multiple times" while Plaintiff was confined in the Anoka County Jail, and those deputies "discovered no foreign objects or tampering with the food."  (Affidavit of David Pacholl, [Docket No. 40], p. 2, ¶ 4.[5])

Defendants have presented additional evidence showing that Plaintiff was examined by an "outside urologist specialist" during his pretrial detention, and that doctor "discovered no evidence of any poisoning."  (Affidavit of Diane Haugen, [Docket No. 38], p. 3, ¶ 11.[6])  The evidence also shows that Plaintiff was examined by health care professionals at the Anoka County Jail on multiple occasions, and nothing in his medical records suggests that

---

However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.") (citations omitted). Deliberate poisoning of a prison inmate's food would undoubtedly violate the Eighth Amendment, (see Day v. Norris, 219 Fed.Appx. 608, 610 (8th Cir. 2007) (allegations of egregious food adulteration were "sufficient to state an Eighth Amendment claim")), and such misconduct would likewise violate the due process rights of a pretrial detainee such as Plaintiff.

[5]  David Pacholl's affidavit identifies him as a "Commander with the Anoka County Sheriff's Office" and the current "Jail Administrator for the Anoka County Jail."

[6]  Diane Haugen's affidavit identifies her as the "Correctional Health Manager" at the Anoka County Jail.

he was ever poisoned while he was confined there.  (Id., ¶ 12.)[7]

If a motion for summary judgment is properly supported by affidavits or other evidence, the nonmoving party must present <u>evidence</u>, by affidavits or otherwise, showing that there is a genuine issue for trial.  Matsushita Electric Industrial Co., 475 U.S. at 587; Lomar Wholesale Grocery, Inc., 824 F.2d at 585.  Although the evidence is examined in the light most favorable to the non-moving party, the non-moving party "may not rest upon mere allegation or denials of his pleading," but "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 256-57.  See also Johnson v. Hamilton, 452 F.3d 967, 972 (8th Cir. 2006) ("[a] party opposing summary judgment is not permitted to merely rest on his pleadings but must instead set forth sufficient evidence from which a reasonable jury could find in his favor on all elements of his claims").

In this case, Plaintiff has not presented any evidence that could support any claim against Defendant Koller or Defendant Boelter under any legal theory.[8]  Indeed, Plaintiff

---

[7]  Defendants have also submitted jail records showing that Plaintiff "displayed odd behavior" while he was confined in the Anoka County Jail, including "a lot of nonsensical talking," "bizarre statements," (e.g., "'[j]ust said I'm making dollars not you'"), "yelling to self in cell," and "walking around the unit talking to himself." (Defendants' Exhibits, [Docket No. 35], Exhibit C.)  This evidence suggests that Plaintiff might have been suffering from some form of mental illness, which could explain his unusual (and unsupported) accusations against Defendants Koller and Boelter.

[8]  Defendants have suggested that Plaintiff might be trying to sue them under § 1983 (or possibly a common law tort theory) for allegedly disregarding his medical needs. However, the Court can find no such claim in Plaintiff's complaint, even if it is given the benefit of an extraordinarily indulgent construction.  Plaintiff does allege that he has "been seeking medical care here at this facility only to be denied medical care;" and it is further alleged that someone named "Dr. Aiper" was aware of Plaintiff's pain in his penis and "discharging from penis," but failed to treat those symptoms.  (See "Statement of Claim" quoted at pp. 2-3, supra.)  However, there are absolutely no allegations showing that any

has not presented any affidavits or other evidence of any kind.  The only evidence in the record is that which has been submitted by Defendants.  Based on that evidence, no judge or juror could find that either Koller or Boelter did anything, or failed to do anything, that could be viewed as a violation of Plaintiff's constitutional rights.  See Ali v. Suchocki, 254 Fed.Appx. 143, 145 (3rd Cir. 2007) (unpublished opinion) ("[t]here is no evidentiary support for [prisoner's] assertion of adulterated food and thus no reason for a trial").  Thus, the Court finds that even if Plaintiff had sued Koller and Boelter in their individual capacities, and not just their official capacities, Defendants still would be entitled to summary judgment in this case.

## IV.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Defendants' Motion For Summary Judgment, (Docket No. 33), be GRANTED; and

2.  This action be dismissed with prejudice.

Dated: May 2, 2012

s/ Franklin L. Noel
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **May 16, 2012**, written

---

of the named Defendants was personally responsible for any alleged medical malfeasance. There are no allegations showing that any of the named Defendants even knew about any of Plaintiff's alleged medical maladies, and (concomitantly) there are no allegations suggesting that any of the named Defendants failed to respond to any such maladies. Plaintiff may believe that someone deliberately or negligently ignored his medical needs, but there are simply no allegations whatsoever suggesting that any of the named Defendants was guilty of any such neglect.

objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.